UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANCE ROSS PAYNE,<br><br>    Plaintiff,<br><br>    v.<br><br>BASER, et al.,<br><br>    Defendants. | No. 2: 20-cv-0553 TLN KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I.     Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 36.) For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

II.    Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

1

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

By notice provided on November 9, 2020 (ECF No. 32), and December 9, 2020 (ECF No. 36-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

<u>Legal Standard for Exhaustion of Administrative Remedies</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.  Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

### III.     Plaintiff's Claims

This action proceeds on plaintiff's original complaint, filed March 3, 2020, against defendants Baser and Crisanto.  (ECF No. 1.)

4

Plaintiff alleges that on December 29, 2017[1], defendants Baser and Crisanto escorted a group of prisoners, including plaintiff, to the treatment center. (Id. at 12.) During the escort, defendant Baser told plaintiff to "hurry up." (Id.) As plaintiff and defendants approached the treatment center, defendant Baser opened the door and told plaintiff to turn around and go back to his housing unit because plaintiff took too long to get to the treatment center. (Id. at 13.) Plaintiff responded, "I can't help it. This is how I walk." (Id.)

Defendant Baser slammed the treatment center door shut just before plaintiff stepped his left foot inside, causing plaintiff's left shoe to fall off. (Id. at 13-14.) Plaintiff asked defendant Baser to apologize for slamming the door on his foot. (Id. at 14.) Defendant Baser yelled, "Get the fuck in there," while simultaneously pulling his metal baton out and striking plaintiff on the right shoulder. (Id.) Defendant Baser then grabbed plaintiff by his jacket, pulling him out of the doorway of the treatment center. (Id.)

Defendant Baser raised his baton a second time to strike plaintiff. (Id.) Before the baton made contact, plaintiff grabbed the baton in mid-air. (Id.) At this time, defendant Crisanto failed to intervene to help plaintiff. (Id. at 15.) Instead, defendant Crisanto yelled, "stop resisting." (Id.)

IV.     Discussion

    A.    Defendants' Evidence

In support of the summary judgment motion, defendants submitted the declaration of S. Boxall, Grievance Coordinator at California State Prison-Sacramento ("CSP-Sac"). (ECF No. 36-5.) S. Boxall states that a search of the computer system was conducted under plaintiff's name and California Department of Corrections and Rehabilitation ("CDCR") number for all non-health care related grievances received by the CSP-Sac Grievance Office. (Id. at 2.) This search revealed that from December 29, 2017, through March 3, 2020, the CSP-Sac Grievance Office received grievance log numbers SAC-A-18-0533, SAC-T-18-00640, SAC-L-18-02455, SAC-S-18-5019, SAC-A-19-1932 and SAC-A-19-2883 from plaintiff. (Id.)

---

[1] In the complaint, plaintiff alleges that the incident occurred on December 29, 2018. However, after reviewing the documents submitted regarding plaintiff's relevant administrative grievances, it is clear that the alleged incident occurred on December 29, 2017.

Grievances SAC-L-18-2455 and SAC-S-18-5019 are unrelated to the claims raised in the instant action. (Id. at 2-4.)

*Grievance SAC-A-18-0533*

In grievance SAC-A-18-0533, signed by plaintiff on January 30, 2018, plaintiff raised claims regarding the disciplinary hearing where he was found guilty of Battery on a Peace Officer based on the December 29, 2017 incident. (Id. at 15.) In this grievance, plaintiff argued that during the Rules Violation Report hearing he did not have his hearing aids. (Id. at 10.) Plaintiff argued that without his hearing aids, he could not hear the Senior Hearing Officer conducting the hearing and could not properly defend himself. (Id.) Plaintiff requested that the Rules Violation Report be reissued and reheard. (Id.) This grievance did not raise the claims raised in the instant action.

On February 10, 2018, Warden Baughman granted grievance SAC-A-18-0533 at the second level review. (Id. at 12.) Warden Baughman ordered the Rules Violation Report to be reissued and reheard. (Id.)

*Grievance SAC-T-18-00640*

In grievance SAC-T-18-00640, signed by plaintiff on February 13, 2018, plaintiff alleged that defendant Baser assaulted him on December 29, 2017. (Id. at 60.) On February 16, 2018, this grievance was cancelled at the First Level of Review due to exceeding the 30 day time constraints for filing grievances. (Id. at 59.) The response stated that the appeal issue occurred on December 29, 2017, and plaintiff had until no later than January 28, 2018 to submit the appeal. (Id.) This appeal was not received into the Appeals Office until February 14, 2018. (Id.) The response also stated,

> It is noted that although you were in segregated housing from 12/29/17 until 2/3/18, you generated appeal SAC-A-18-00533 on 1/30/18, which was received in the Appeals Office on 1/31/18, demonstrating your access to the appeals process while housed in ASU. Therefore, this appeal is cancelled and is being returned to you. You can submit a separate appeal on the disciplinary issue related to this, as long as it is submitted within the 30 day time constraints of receiving your final copy of the RVR.

(Id.)

////

6

The First Level Review form also stated that, pursuant to California Code of Regulations title 15, § 3084(6)(e), once an appeal has been cancelled, that appeal may not be resubmitted. (Id.) The form further stated, "However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted." (Id.)

On the bottom of the form containing the First Level Response is a section stating, "Note: If you are required to respond/explain to this CDCR Form 695 use only the lines provided below." (Id.) Although plaintiff was not required to respond to the form, plaintiff wrote the following statements in the provided lines:

> Due to the fact Sg. Fugioha has recommended appellant to receive DDP is evidence the inmate has a learning disability and delay is due to CDCR not providing DDP appellate assistance within due process, protecting him from victimization violation…

(Id.)

Apparently in response to these comments, a second First Level response to grievance no. SAC-T-18-00640 was issued on March 7, 2018. (Id. at 58.) This response states,

> The enclosed documents are being returned to you for the following reasons.
>
> It has been determined that you are attempting to submit an appeal that has been previously cancelled. Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the appeals process. Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).
>
> Your appeal was cancelled per CDC Form 695 dated February 16, 2018. You did not follow the directions on this form. Refer to the last paragraph on the form which states, "Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. You need to attach the original appeal with all of its attachments to the cancellation appeal so that the documents can be reviewed in order to make an informed decision on the appropriateness of the cancellation. Please return the cancellation appeal with the original appeal together for processing and review.

(Id.)

In support of the summary judgment motion, defendants submitted a form titled, "Inmate Appeal Decision Effective Communication Confirmation," issued in connection with the

7

February 16, 2018 First Level response to grievance SAC SAC-T-18-00640. (Id. at 88.) This form states,

> Pursuant to 10/22/03 memorandum titled EQUALLY EFFECTIVE COMMUNICATION (REVISED), we must ensure and document effective communication for appeals regarding due process contacts, clinical encounters and liberty interests.
>
> In these cases, the appeal decision (including appeal screening form CDCR 695) is to be delivered and read to inmates on the TABE 4.0 and LD lists. Return completed Effective Communication Confirmation Form to the Appeals Office.

(Id.)

The Effective Communication Confirmation Form contains plaintiff's name and appeal no. SAC-T-18-00640. (Id.) The form states that it was assigned on February 16, 2018, and due back on February 23, 2018. (Id.) The form indicates that plaintiff had a TABE score of 4.0 or lower and hearing problems which could implicate potential effective communication triggers. (Id.) The form states that on February 23, 2018, Sergeant Fujiwara communicated to plaintiff the February 16, 2018 CDC Form 695, i.e., the February 16, 2018 First Level response to grievance SAC-T-18-00640. (Id.)

The form states that Sergeant Fujiwara read the First Level response to plaintiff in simple English, that was spoken slowly and clearly. (Id.) The form states that effective communication with plaintiff was determined by 1) plaintiff reiterating in his own words, what was explained; 2) plaintiff providing appropriate, substantive responses to questions asked; and 3) plaintiff asking appropriate questions regarding the information provided. (Id.)

Defendants also provided an "Inmate Appeal Decision Effective Communication Confirmation" form indicating that on March 11, 2018, Sergeant Reeds read to plaintiff the March 7, 2018 response to grievance no. SAC-T-18-00640. (Id. at 90.) This form states that Sergeant Reeds read the response to plaintiff while plaintiff wore his hearing aids. (Id.) The form indicates that effective communication with plaintiff was determined on the same grounds found by Sergeant Fujiwara, discussed above. (Id.)

*Grievance SAC-A-19-1932*

In grievance SAC-A-19-1932, plaintiff wrote that he did not receive a response to

8

1  grievance SAC-T-18-00640. (Id. at 84.) Plaintiff signed this grievance on May 5, 2019. (Id.)

2  On May 13, 2019, grievance SAC-A-19-1932 was cancelled for exceeding time limits to submit

3  grievances. (Id. at 82.) The response stated,

4  
> Per the attached EEC copies you received appeal log # SAC-T-18-00640 twice, once on 2/23/18 and again on 3/11/18. You also wrote back on the Form 695 dated 2/16/18, proving that you knew the appeal had already been cancelled on 2/16/18. You are beyond the 30 day timeframes to appeal this issue and your appeal is being cancelled as such.

7  (Id.)

8  This form stated that once an appeal has been cancelled, it may not be resubmitted. (Id.)

9  The form stated that a separate appeal could be filed on the cancellation decision. (Id.)

10  Rather than filing a separate appeal, on June 2, 2019, plaintiff appealed the cancellation of

11  grievance SAC-A-19-1932 to the next level of review. (Id. at 98.) On June 11, 2019, a First

12  Level response to this grievance was issued. (Id. at 95.) This response stated that plaintiff was

13  improperly attempting to submit an appeal that had been previously cancelled. (Id.)

> This issue has already been cancelled. A cancellation is not considered a response; therefore, it does not allow you to proceed to the next level of review. If you disagree with the cancellation decision, you may appeal the cancellation by submitting a new appeal explaining why you feel the cancellation was in error. Be sure to attach the cancelled appeal and all attachments speaking only to the cancellation and not restating the previous appeal issue…

18  (Id.)

19  Defendants submitted an "Inmate Appeal Decision Effective Communication

20  Confirmation" form regarding grievance SAC-A-19-1932. (Id. at 111.) However, this form is

21  not completed by prison officials. (Id.)

22  *Grievance SAC-A-19-2883*

23  On July 1, 2019, plaintiff submitted grievance SAC-A-19-2883. (Id. at 116.) In this

24  grievance, plaintiff wrote that he was appealing the "cancellation of my 602 appeal." (Id.)

25  Grievance SAC-A-19-2883 was bypassed at the First Level of review. (Id.)

26  On August 9, 2019, Warden Lynch issued a Second Level response denying grievance

27  SAC-A-19-2883. (Id. at 114-15.) The response stated that plaintiff was appealing the

28  cancellation of grievance SAC-A-19-1932. (Id. at 114.) In the response, Warden Lynch stated,

9

in relevant part,

> A review of the Test of Adult Basic Education list reveals the appellant has a Reading Grade Point Level below 4.0. The appellant is a participant in the Mental Health Services Delivery System, at the Correctional Clinical Case Management System (CCCMS) level of care. Appellant's Development Disability Program code is NCF indicating that he does not require adaptive functioning evaluation. The appellant's Disability Placement Program code is DLT, DNH. Therefore, he does require special accommodation to achieve effective communication, Hearing Aids and Needs Staff to Speak Loudly and Clearly.
>
> Effective communication was achieved by speaking slowly, loudly and clearly, using simple words and terms, and the appellant displayed understanding of the issues related to this appeal by discussing the merits of his appeal, using his own words to relate those issues that were submitted on the Form 602/602a. The appellant was advised if he could not hear, at any point in the interview, to notify staff.
>
> A telephone interview with the appellant was conducted by CCII(A) O'Brian on August 7, 2019 at approximately 1400 hours, at High Desert State Prison (HDSP), with the assistance of Correctional Counselor I (CCI) B. Patterson. During the interview, appellant did not have anything additional to add to the appeal.
>
> The SLR reviewed the processing of appeal log SAC-A-19-01932. The appeal was received by CSP-SAC Appeals Office on May 13, 2019. On May 13, 2019, the appeal was cancelled and screened back to the appellant, advising the appellant he has exceeded the time limits for resubmitting the appeal. The appellant was advised he received his copy of appeal log SAC-T-18-00640 twice, on February 23, 2018 and March 11, 2018, per Inmate Appeal Decision Effective Communication Confirmation Forms (EEC Form). The appellant was advised he wrote back on the CDCR 695 Form dated February 16, 2018, which demonstrated that he was aware the appeal had already been cancelled on February 16, 2018, therefore making him beyond the 30 day timeframes to appeal the issue.
>
> The appeals office received SAC-A-19-01932 back again on June 6, 2019. The appellant wrote in section D of the CDCR 602, noting he was dissatisfied with the first level response. The appeal was screened back to the appellant on June 11, 2019, advising the appellant the appeal was already cancelled which is not considered a first level response and he could not proceed to the next level of review. The appellant was advised if he disagreed with the cancellation decision, he may appeal the cancellation by submitting a new appeal explaining why he felt the cancellation was in error and to attach the cancelled appeal and all attachments speaking only to the cancellation and not restating the previous appeal issue.
>
> A review of appeal log SAC-A-19-01932, notes the appellant claims CSP-SAC never investigated his claims on appeal log SAC-T-18-00640 and he never received a response. Appeal log SAC-T-18-

> 00640 was screened back to the appellant stating the Hiring Authority reviewed his appeal and it was cancelled due to time constraints. Per EEC Form, dated February 16, 2018, the appellant was issued the appeal and the CDCR Form 695 on February 23, 2018 by Sergeant (Sgt.) Fujiwara. The appellant resubmitted his appeal, writing on the CDCR 695 Form and stating, "Due to the fact Sgt. Fuji has recommended appellant to receive DDP …delay is due to CDCR not providing appellate assistance with due process." The appeal was screened back to the appellant advising him the appeal was already cancelled and a separate appeal can be filed on the cancellation decision. Per EEC Form, dated March 7, 2018, the appellant was again issued the appeal and CDCR 695 Forms on March 11, 2018 by Sgt. Deeds. Appeal log SAC-A-19-01932 was received in the Appeals Office on May 13, 2019, beyond the 30 day time constraints to appeal a cancellation decision.
>
> Based on the review of this matter, the SLR has determined appeal, log SAC-A-19-01932 was appropriately cancelled as time constraints were exceeded. The request to process appeal SAC-A-19-01932 is Denied.

(Id. at 114-15.)

*Plaintiff's Third Level Grievances*

Defendants filed the declaration of Howard E. Mosely, the Associate Director of the Office of Appeals ("OOA") for the CDCR. (ECF No. 36-4.) Mr. Mosely states that on May 13, 2020, he conducted a search of the OOA computer system for all non-health care related appeals received by the OOA from plaintiff. (Id. at 3.) Mr. Mosely states that the OOA received two appeals from plaintiff after December 29, 2017, i.e., appeal nos. SAC-S-18-05019 and SAC-A-19-2883. (Id.)

Grievance SAC-S-18-5019 is unrelated to the claims raised in the instant action. (See id. at 8-9.) The Third Level Appeal Decision in grievance SAC-A-19-2883 denied plaintiff's grievance. (Id. at 56-57.)

B. Discussion

In the summary judgment motion, defendants argue that plaintiff's grievance for the claims raised in this action is SAC-T-18-00640. Defendants argue that this grievance did not exhaust plaintiff's administrative remedies because it was cancelled as untimely. Under prison regulations applicable at the time of the events alleged in the complaint, inmates were required to submit grievances within thirty days of the event or decision appealed. Cal. Code Regs., tit. 15,

former § 3084.8(b).[2] The regulations allowed an appeal to be cancelled if the time limits were exceeded. Cal. Code Regs., tit. 15, former § 3084.6(c). An inmate may separately appeal the cancellation of an appeal. Cal. Code Regs., tit. 15, former § 3084.6(e). At the discretion of the appeals coordinator or the third level appeals chief, a cancelled appeal later could be accepted if it were determined that the cancellation had been erroneous or if new information had been received making the appeal eligible for review. Cal. Code Regs., tit. 15 former § 3084.6(a)(3).

In the summary judgment motion, defendants argue that plaintiff was advised of the procedures for appealing the cancellation of grievance SAC-T-18-00640 in the February 16, 2018 screening notice for the cancellation of this grievance. Defendants contend that despite these rules and instructions to him, plaintiff simply resubmitted the cancelled appeal. Because plaintiff was attempting to resubmit the previously cancelled appeal, on March 7, 2018, the appeal was screened out and returned to him.

Defendants observe that fourteen months after March 7, 2018, plaintiff submitted grievance SAC-A-19-1932 claiming that he had not received a response to the original grievance SAC-T-18-00640. This grievance was screened out as untimely.

Defendants observe that in grievance SAC A-19-2883, plaintiff contested the cancellation of grievance SAC-A-19-1932. Defendants contend that the denial decisions in grievance SAC A-19-2883 confirmed that appeal SAC-A-19-1932 was properly cancelled as untimely.

In summary, defendants argue that because plaintiff's original grievance, i.e., SAC-T-18-00640, was cancelled as untimely, plaintiff failed to exhaust administrative remedies. See Woodford v. Ngo, 548 U.S. at 90-91 (an untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement). In addition, in order to exhaust administrative remedies, plaintiff was required to appeal the cancellation decision regarding grievance SAC-T-18-00640. See Villery v. Beard, 2019 WL 250532, at *10 (E.D. Cal. Jan. 17, 2019) (citing Wilson v. Zubiate, 718 F.App'x 479, 482 (9th Cir. 2017) ("[Plaintiff] had the possibility of appealing the

---

[2] On March 25, 2020, CDCR issued an emergency appeal of these regulations and issued new regulations which are effective June 1, 2020 through November 1, 2020. See Cal. Code Regs., tit. 15, § 3480, et. seq.

cancellation decision and therefore cannot show that he was 'thwarted by improper screening' under Sapp, 623 F.3d at 823."), adopted at 2019 WL 4687079 (E.D. Cal. Sept. 26, 2019). Defendants argue that plaintiff failed to file a timely grievance challenging the cancellation of grievance SAC-T-18-00640. On these grounds, defendants argue that they are entitled to summary judgment based on plaintiff's failure to exhaust administrative remedies.

The undersigned finds that defendants met their initial summary judgment burden in demonstrating that plaintiff failed to exhaust his administrative remedies. Defendants' evidence demonstrates that plaintiff failed to file a timely grievance challenging the alleged excessive force incident. Defendants' evidence demonstrates that plaintiff failed to file a timely and successful grievance challenging the cancellation of his original grievance.

In opposition, plaintiff does not dispute defendants' evidence regarding the four grievances discussed above. Plaintiff argues that his failure to exhaust administrative remedies should be excused on two grounds. First, plaintiff argues that he waited to submit grievance SAC-T-18-00640 until fourteen days passed after submitting grievance SAC-A-18-0533. (ECF No. 45 at 2-3.) Plaintiff argues that he was required to wait because California Code of Regulations title 15, § 3084.4 states that the filing of more than one administrative grievance within fourteen calendar days is considered an abuse of the appeals system. (Id.)

The undersigned is not persuaded by plaintiff's argument that he was required to wait fourteen days to submit grievance SAC-T-18-00640 until fourteen days after he submitted grievance SAC-A-18-0533. The rules violation hearing challenged in SAC-A-18-0533 occurred on January 23, 2018. (ECF No. 36-5 at 11.) The at-issue alleged excessive force incident occurred on December 29, 2017. Plaintiff had thirty days from December 29, 2017, to file a timely grievance. Plaintiff does not explain why he did not file a grievance raising his excessive force claims before January 23, 2018.

In addition, as observed by defendants in the reply, plaintiff submitted grievance SAC-18-A-0533 on January 30, 2018, which was more than thirty days after the at-issue December 29, 2017 incident. Therefore, plaintiff's time to administratively appeal the at-issue December 29, 2017 incident had already expired.

13

For the reasons discussed above, the undersigned finds that plaintiff's argument that he was required to wait fourteen days after submitting grievance SAC-A-18-0533 before submitting his grievance regarding the December 29, 2017 incident is without merit.

In opposition, plaintiff also argues that due to learning, hearing and cognitive disabilities, he required assistance in preparing his grievances which he did not receive. (ECF No. 45 at 5.) Plaintiff argues that he could not read, hear or comprehend what was necessary for him to file a timely grievance. (Id.) Plaintiff also argues that when he received the March 7, 2018 CDCR-695 form screening out grievance SAC-T-18-00640, he felt that he was "out of options" because CDCR rules did not allow him to bypass a level of administrative review in order to seek relief. (Id. at 6.) Plaintiff alleges that he filed another lawsuit raising the claims raised in the instant action, i.e., 2: 18-cv-956 JAM CKD P, which was dismissed for failure to exhaust administrative remedies. (Id.)

In the reply, defendants argue that plaintiff's opposition contains no admissible evidence to support his claim that a lack of assistance by prison staff at any time prevented him from submitting an appeal. Defendants observe that plaintiff attaches no evidence to his opposition in support of this claim and that the opposition is not verified.

In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted). The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances render administrative remedies unavailable, including the failure of

prison officials to properly process a prisoner's grievance. Id. at 1079.[3]

While plaintiff may not have submitted evidence in support of his claim that his alleged learning, hearing and cognitive disabilities prevented him from exhausting his administrative remedies, defendants presented evidence of plaintiff's reading and hearing disabilities. The Inmate Appeal Decision Effective Communication Confirmation forms, submitted by defendants, reflect that plaintiff's TABE score was 4.0 or lower and that plaintiff had a hearing disability.

The undersigned is sympathetic to plaintiff's reading and hearing disability. However, plaintiff cites no legal authority demonstrating that these conditions, standing alone, render administrative remedies unavailable, and this court has not found any. Based on Ross, the undersigned cannot find that these conditions are special circumstances rendering administrative remedies unavailable. See Ramirez v. Rose, 2020 WL 1907445, at *7 (E.D. Cal. March 5, 2020), adopted at 2020 WL 1905286 (April 17, 2020) (same) (citing Ross, 136 S. Ct. at 1858 (there is no "special circumstances" exception to PLRA"s exhaustion rule)).[4]

For the reasons discussed above, the undersigned recommends that defendants' summary judgment motion be granted on the grounds that plaintiff failed to exhaust administrative remedies. The evidence demonstrates that plaintiff's grievance addressing the excessive force incident, i.e., SAC-T-18-00640, was properly cancelled as untimely. The evidence demonstrates

---

[3] See also, e.g., Reyes v. Smith, 810 F.3d 654, 658, 659 (9th Cir. 2016) (despite failure to identify the specific doctors, grievance plainly put prison on notice that inmate complained about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process, and rendered a decision on the merits of the grievance at each step of the process); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (if inmate'59s administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as unavailable); Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (prisoner not required to proceed to third level where appeal granted at second level and no further relief was available).

[4] The undersigned also observes that both of the Inmate Appeal Decision Effective Communication Confirmation forms submitted regarding grievance SAC-T-18-00640 reflect that the decision to cancel the grievance was explained to plaintiff on two separate occasions and that plaintiff understood the decision.

that plaintiff failed to submit a timely (and successful) grievance challenging the cancellation of grievance SAC-T-18-00640.

Defendants also move for summary judgment as to defendant Crisanto on the grounds that plaintiff's grievance did not name defendant Crisanto. Defendants are correct that in the relevant grievance, SAC-T-18-00640, plaintiff did not name defendant Crisanto. (See ECF No. 36-5 at 60-63.) In this grievance, plaintiff alleged only that defendant Baser committed "assault and battery." (Id. at 60.)

Under the PLRA, a grievance "'suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (quoting Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)). "A grievance...need not contain every fact necessary to prove each element of an eventual legal claim." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id.

In grievance SAC-T-18-00640, plaintiff did not put prison officials on notice that defendant Crisanto participated in the alleged excessive force incident. Accordingly, the undersigned recommends that defendant Crisanto be granted summary judgment on these additional grounds.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 36) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that

////

////

////

////

failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 2, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Pay553.sj